UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LUIS CHAVEZ,

       Petitioner,

v.                               Case No:  2:12-cv-459-FtM-38CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.

_____/

### OPINION AND ORDER[1]

This case is before the Court on a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Luis Chavez ("Petitioner") (Doc. 1, filed August 23, 2012). Petitioner submitted a memorandum and exhibits in support of his petition (Doc. 2; Doc. 3).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought should not be granted (Doc. 10).  Thereafter, Respondents filed a response in compliance with the Court's instructions and the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 13).  Petitioner filed a reply and a supplemental reply to the response (Doc. 18; Doc. 19).

_____

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

In his sole claim, Petitioner asserts that counsel was ineffective because he failed to depose three witnesses who were critical to his defense (Doc. 1 at 5). Because this Court can adequately assess Petitioner's claim without further factual development, an evidentiary hearing will not be conducted. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). Upon due consideration of the petition and supporting documents, the response, the replies, and the state court record, the Court concludes that the petition must be denied.

1. **Background and Procedural History**

On May 1, 2007, Petitioner pleaded guilty to lewd or lascivious molestation of a child less than twelve years of age and was sentenced to two years' sex offender probation (Ex. 2; Ex. 3; Ex. 4).[2] On July 23, 2007, an affidavit of violation of probation ("VOP") was filed which asserted that Petitioner had violated the terms of his probation by having contact with the victim's mother (Ex. 5). A VOP hearing was held on December 7, 2007 (Ex. 6). The court concluded that Petitioner's violation had been willful and substantial and revoked Petitioner's probation. He was sentenced to a guidelines sentence of 82.5 months in prison (Ex. 7; Ex. 8). The sentence was *per curiam* affirmed by Florida's Second District Court of Appeal on July 23, 2008 (Ex. 12); *Chavez v. State*, 987 So. 2d 1216 (Fla. 2d DCA 2008).

On January 6, 2009, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 13). Subsequently, he filed three amendments to the Rule 3.850 motion (Ex. 15; Ex. 17; Ex. 19). In the motions, Petitioner raised four claims of ineffective assistance of counsel and

---

[2] Unless otherwise noted, references to exhibits are to those filed by Respondents on February 8, 2013 (Doc. 15).

two claims of trial court error. *Id.*   The post-conviction court denied the Rule 3.850 claims (Ex. 20), and Florida's Second District Court of Appeal *per curiam* affirmed on June 20, 2012 (Ex. 23); *Chavez v. State*, 94 So.3d 590 (Fla. 2d DCA 2012).

Petitioner timely filed the instant petition in this Court on August 23, 2012 (Doc. 1).

## II.   <u>Governing Legal Principles</u>

### a.   *The Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.   *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme

Court's precedents if the state court correctly identified the governing legal principle, but applied it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).   The unreasonable application inquiry requires the state court decision to be more than incorrect or erroneous, rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward,* 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum).   When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b.   *Ineffective Assistance of Counsel*

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel

rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* Because both parts of the *Strickland* test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.   That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.   In *Hill v. Lockhart*, the Supreme Court extended the two-prong test devised in *Strickland* "to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 52, 58 (1985).   According to *Hill*, the court's prejudice analysis focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59.   In other words, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Finally, the Supreme Court has clarified that, pursuant to the AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.   This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).   "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."   *Id.*

## III.   <u>Analysis</u>

Petitioner asserts that his VOP counsel did not make a reasonable investigation into the facts and circumstances of his case or depose all necessary witnesses "in order to formulate a cogent defense against the charges Petitioner faced at [his VOP hearing]." (Doc. 2 at 10).   Specifically, Petitioner alleges that Counsel failed to honor his repeated requests to "depose and subpoena" Probation Officer Gogan ("Gogan"), Probation Officer

Miller ("Miller"), and the victim's mother, Sondra Correa ("Correa") ([Doc. 2 at 10-11](#)). Petitioner asserts that: (1) Officer Gogan would have been obligated to testify as to why only five minutes lapsed between Correa's arrival at his house and Officer Gogen's own arrival; (2) Officer Miller would have been obligated to testify as to why he failed to properly warn Petitioner about the rules pertaining to the no-contact order; and (3) Sondra Correa would have been obligated to testify that she initiated contact with Petitioner "under the guise of returning [his] personal property, prior to a divorce settlement." ([Doc. 2 at 10-11](#)).

Petitioner raised this claim in his Rule 3.850 motion, but did not identify the substance of the witnesses' putative testimony in his motion (Ex. 19). The post-conviction court denied the claim as facially insufficient because Petitioner had not stated with particularity "the identity of the witnesses, the substance of the expected testimony, and how the omission of this evidence prejudiced the outcome of trial." (Ex. 20). However, the post-conviction court also concluded that "even if Defendant were granted leave to amend, he would not be able to demonstrate prejudice as the record reflects that all three of the witnesses that Defendant claims counsel failed to depose testified at his violation of probation hearing or his sentencing hearing." (Ex. 20 at 3).

Respondent argues that the state court's rejection of this claim was reasonable because Petitioner has not shown that counsel's performance was deficient and has not demonstrated how he suffered prejudice from counsel's failure to depose the three witnesses ([Doc. 13 at 9-10](#)). Indeed, Petitioner does not explain how the state court's adjudication of this claim was contrary to *Strickland* or was based upon an unreasonable determination of the facts. Rather, he merely asserts that the state court's conclusion was in error and speculates that had counsel deposed these witnesses, the state court

would not have concluded that the violation of his probation had been willful and substantial (Doc. 2 at 9).   Upon review of the state court record, the Court concludes that the state court's adjudication of this claim was reasonable.

During Petitioner's VOP hearing, Officer Miller testified that he explained to Petitioner that he could have no contact with Correa and that Petitioner understood the no-contact order (Ex. 6 at 21-22).   On cross examination, defense counsel asked Officer Miller if he had explained to Petitioner that it was a "qualified" no-contact order. *Id* at 22. Officer Miller replied that when he went through the conditions of probation with Petitioner, "condition 31 stated no contact with the victim, Patricia Rojas (phonetic) and mother, Sondra Correa, except for legal proceedings for dissolution of marriage." *Id.* at 23.

Officer Gogan testified at the VOP hearing that it was his job to supervise probationers to ensure that they adhered to their conditions of probation (Ex. 6 at 25-26). He visited Petitioner several times in his home prior to the violation. *Id.* at 29.   He stated that during the visits, he would do a "walk-through" of Petitioner's home to ensure that there were no children in the house. *Id.* at 27.   He testified that a few weeks prior to Petitioner's violation, Petitioner needed to remove some of his items from his ex-wife's (Sondra Correa's) residence. *Id.* at 30.   Gogan explained to Petitioner that he could not have "any type of contact" with Correa, and had gone over the no-contact order with him several times. *Id.* at 30, 31.   Petitioner had no questions about the no-contact order. *Id.* at 31.   Gogan also testified that he explained to Correa that she and Petitioner "were not allowed to have any contact between the two of them." *Id.* at 32.   Gogan testified that on the night of the violation, he was doing a "compliance check" to ensure that probationers were complying with their curfews. *Id.*   He visited Petitioner at about 10 p.m. and did a standard walk-through of his house during which he discovered a woman attempting to

hide in Petitioner's master bathroom. *Id.* at 32-33.[3]   Gogan ran a check of the license tag of the woman's car and discovered that it belonged to Correa and that a condition of Petitioner's probation was that he could have no contact with her. *Id.* at 34.   On cross examination, Gogan testified that Correa understood that any contact with Petitioner would result in a violation of probation, but he did not know whether Correa was vindictive towards Petitioner. *Id.* at 47-49.

During his own testimony at the VOP hearing, Petitioner did not counter the testimony offered by Miller or Gogan.   Rather, he testified that Correa came to his house uninvited and that he allowed her in only to use the restroom. *Id.* at 55.   He stated that he would not have allowed her in the house had he realized it was her. *Id.*

During closing argument, counsel strenuously argued that Petitioner had made reasonable efforts to comply with the conditions of his probation and that he had not sought contact with Correa.   Defense counsel noted that Correa had arrived uninvited, and had Petitioner left the house when Correa entered, he would have been in violation of his curfew, which could also have resulted in a violation of probation.   Counsel argued that "[i]t's like a trap for him that could be set by the mother of the victim in this case." (Ex. 6 at 64-66).   The state court disagreed, noting that Petitioner "could have very easily shut the door and not allowed [Correa] in[.]" *Id.* at 71.   The court concluded that there had been a willful and substantial violation of probation and revoked Petitioner's probation, *Id.*

---

[3] During Gogan's direct examination, defense counsel noted that there had been a potential discovery violation because the state had not informed the defense that Petitioner had initially identified the woman in his bathroom as merely "a friend." (Ex. 6 at 36).   The court allowed counsel to speak with Petitioner to seek if he wanted to delay the hearing so that counsel could depose Officer Gogan (Ex. 6 at 44).   After speaking with Petitioner, counsel stated that they were ready to continue without deposing Gogan. *Id.* Counsel explained to Petitioner that his statement to Gogan would not be suppressed, but Petitioner still wished to proceed. *Id.* at 45.

At sentencing, Sandra Correa testified that she initiated the contact with Petitioner and that she did not wish to see him sent to prison (Ex. 8 at 9-10).   The state court noted it did not find the evidence that Correa had initiated the contact persuasive because, "[w]hether or not the mother instigated the contact, [Petitioner] understood very clearly that it was his responsibility to not have this contact[.]" *Id.* at 24-25.   Petitioner was sentenced to a guidelines sentence of 82.5 months in prison. *Id.* at 22.

Petitioner speculates that there may have been a "deliberately calculated effort" on the parts of Miller, Gogan, and Correa to violate his probation, and that as a result "no one can know with certainty what a professionally conducted defense may have obtained[.]" (Doc. 19 at 3).   Petitioner asserts that had counsel deposed these witnesses, he may have been able to impeach them, and the judge may not have found that Petitioner willfully violated the terms of his conditional probation. *Id.*   However, Petitioner produces no evidence that any witnesses conspired to violate his probation or that if deposed, Miller, Gogan, or Correa would have testified any differently than they testified in court.   Nor has Petitioner demonstrated that trial counsel failed to effectively cross-examine Miller, Gogan or Correa.   Habeas courts generally view ineffective assistance claims with great caution when the only evidence of a missing witness's testimony comes from the defendant. *See Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.   A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) ("[M]ere speculation that missing witnesses would have been helpful is insufficient to meet

the petitioner's burden of proof.") (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001)).   Finally as noted by the state court, even had Correa visited Petitioner in a calculated effort to violate his probation, it was Petitioner's responsibility to ensure that he had no contact with her, and Petitioner does not dispute that he allowed her into his home.

The state court's conclusion that Petitioner could not show prejudice due to counsel's failure to depose these witnesses was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.   Accordingly, Petitioner's claim is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     Petitioner's claim that trial counsel was ineffective for failing to depose witnesses is **DENIED**;

2.     With no remaining claims, this case is **DISMISSED WITH PREJUDICE**;

3.     Petitioner is **DENIED** a Certificate of Appealability; and

4.     The Clerk of the Court is directed to terminate all pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 1st day of July, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Luis Chavez
Counsel of Record